# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

July 29, 2020

To:     Roger A. G. Sharpe
        UNITED STATES DISTRICT COURT
        Southern District of Indiana
        304 Federal Building
        Evansville , IN 47708-0000

| No. 19-2441 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>RASHAD R. ROBINSON,<br>Defendant - Appellant |
|---|---|

| **Originating Case Information:** |
|---|
| District Court No: 3:16-cr-00040-RLY-CMM-1<br>Southern District of Indiana, Evansville Division<br>District Judge Richard L. Young |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:          No record to be returned

This notice sent to:

[]        United States Marshal          [ x ]        United States Probation Officer

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                    **Received by:**

    7/29/2020
_____          _____
                                              Deputy Clerk, U.S. District Court

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

**FINAL JUDGMENT**

July 7, 2020

Before:        ILANA DIAMOND ROVNER, Circuit Judge
               DIANE P. WOOD, Circuit Judge
               AMY C. BARRETT, Circuit Judge

| | |
|---|---|
| No. 19-2441 | UNITED STATES OF AMERICA, Plaintiff - Appellee<br><br>v.<br><br>RASHAD RAE ROBINSON, Defendant - Appellant |
| **Originating Case Information:** | |
| District Court No: 3:16-cr-00040-RLY-CMM-1<br>Southern District of Indiana, Evansville Division<br>District Judge Richard L. Young | |

The judgment of the District Court is **AFFIRMED** in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

In the

# United States Court of Appeals

## For the Seventh Circuit



CERTIFIED COPY

A True Copy

Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 19-2441

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RASHAD RAE ROBINSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:16-cr-00040-RLY-CMM-1 — **Richard L. Young**, *Judge.*

ARGUED FEBRUARY 26, 2020 — DECIDED JULY 7, 2020

Before ROVNER, WOOD and BARRETT, *Circuit Judges*.

ROVNER, *Circuit Judge*. Rashad Rae Robinson pled guilty to a conspiracy to distribute methamphetamine after he was caught in a controlled buy. The only question we face in this appeal is, "In his plea, how much methamphetamine did he admit to selling?" And, of course, this question is only relevant because Robinson contends his prison sentence is too long. Robinson claims on appeal that although the government indicted him for a participating in a conspiracy

involving 500 grams or more of methamphetamine, he only pled guilty to a conspiracy involving a lesser or unspecified amount. The facts indicate otherwise and we affirm the district court's holding.

## I.

The dominos began to fall around Robinson after one of his customers, Joshua Jacobs, sold methamphetamine to a confidential source. Following his arrest, Jacobs stated that he purchased the methamphetamine from Robinson, and had done so ten to twelve times, totaling approximately one pound (450g) of methamphetamine. The next day, as officers listened in on a recorded call, Robinson agreed to deliver more methamphetamine to Jacobs. Robinson was arrested shortly thereafter, and in a search incident to arrest, police found 86.4 grams of methamphetamine and $2,575 in his pant leg.

The government filed the following indictment:

> Beginning on or about January 1, 2016, and continuing up to and through July, 2016, in the Southern District of Indiana, Evansville Division, and elsewhere, RASHAD RAE ROBINSON, JOSHUA JACOBS, TANNER MCCOY, and BRANDI NICHOLE ADDISON, defendants, did knowingly conspire together and with diverse other persons, known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine, a Schedule II Non-Narcotic Controlled Substance, in

> violation of Title 21, United States Code, Sec-
> tions 841(a)(1), 841(b)(1)(A) and 846.

(R. 12).

Robinson pled guilty to this indictment at a plea hearing. This ought to end the story. In this appeal, however, Robinson argues that despite the clear language in the indictment above, he did not plead guilty to an offense punishable under 21 U.S.C. §841(b)(1)(A) involving 500 grams or more of meth-amphetamine,[1] but rather pled guilty to, at most, an offense involving a lesser amount of methamphetamine under 21 U.S.C. §841(b)(1)(B).[2] A review of the facts reveals otherwise. Robinson admitted to the facts implicating him in the greater crime—21 U.S.C. §841(b)(1)(A)—in documents filed before the plea hearing, at the plea hearing itself, by admitting to the facts in the presentence investigation report, and at sentencing. We describe each of these, in turn.

## A. The plea phase

Leading up to the change of plea hearing, Robinson filed a Petition to Enter a Plea of Guilty, affirming that he had "read and discussed the Indictment with my attorney and believe and feel that I understand every accusation made against

---

[1] 21 U.S.C. §841(b)(1)(A)(viii) ("50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers")

[2] 21 U.S.C. §841(b)(1)(B)(viii) ("5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.")

me." (R. 127 at 2). He also stated, "I wish to plead 'Guilty,' and respectfully request the Court to accept my plea as follows: 'Guilty' as charged to Count <u>One</u> of the Indictment filed against me." *Id.* at 4. (underlining in original). Count one of the indictment, of course, described a conspiracy involving 500 grams or more of methamphetamine under §841(b)(1)(A). He also agreed that he had been advised that the minimum sentence provided by the statute was ten years and the maximum was life. *Id.* This is the statutory minimum and maximum provided by §841(b)(1)(A). He further stated that he made no claim of innocence. *Id.*

In exchange for the plea, the government agreed not to seek an increased sentence based on his prior felony convictions pursuant to 21 U.S.C. §851. (R. 161 at 3). The government's lawyer also stated that she believed that the base offense level would be a 36, which is consistent with a guilty plea under §841(b)(1)(A). *Id.* In sum, before either party entered the courtroom, both sides had agreed that Robinson would plead guilty to §841(b)(1)(A)—a conspiracy involving 500 grams or more of methamphetamine.

Once all of the parties were standing before the district court, the colloquy before the judge reflected the agreement that Robinson would plead guilty to a conspiracy involving 500 grams or more of methamphetamine:

> THE COURT: The grand jury charges beginning on or about January 1, 2016, and continuing up to and through July 2016, Southern District of Indiana, Evansville Division and elsewhere, Rashad Rae Robinson, Joshua Jacobs, Tanner McCoy, and Nichole Brandi Addison [sic], defendants, did knowingly conspire together with

diverse other persons known and unknown to
the grand jury, to possess with the intent to dis-
tribute and distribute **500 grams or more** of a
substance containing a detectable amount of
methamphetamine, a Schedule II nonnarcotic
controlled substance, all in violation of 21 U.S.
Code Section[s] 841 and 846.

Mr. Robinson, do you understand the nature of
that allegation?

THE DEFENDANT: **Yes**, Your Honor.

THE COURT: Is that true?

THE DEFENDANT: **Yes**, Your Honor.

*Id.* at 14 (emphasis ours). In short, Robinson admitted at the
plea hearing that he participated in a conspiracy involving
500 grams or more of methamphetamine.

**B.  The sentencing phase**

In the sentencing phase, Robinson made several more im-
plicit and explicit admissions to the drug amount. In his writ-
ten objections to the presentence investigation report (PSR),
Robinson disagreed with the characterization of his role as a
"leader," and to the calculation of his criminal history points.
(R. 136, 138).[3] Thus, despite understanding that he could ob-
ject to information in the PSR with which he disagreed, Rob-
inson made no objections to the drug quantity amount or to

---

[3] The district court judge ultimately agreed that Robinson was not a leader
but overruled his objection to the criminal history points. R. 158 at 21.

the fact that he believed he had been convicted under the wrong subsection of 21 U.S.C. §841.

The sentencing proceedings continued in a manner consistent with the pre-hearing filings. At the very start of the sentencing hearing, the judge explained that Robinson was before the court for a crime involving 500 grams or more of methamphetamine. The district court judge stated: "My record reflects on February 28, 2019, [the] Court found an independent factual basis for the defendant's plea to conspiracy to possess with the intent to distribute and distribute 500 grams or more of methamphetamine, a violation of 21 U.S. Code section 841(a)(1) and 846." (R. 158 at 2). Robinson's counsel confirmed that this was his understanding of the record as well. *Id.*

As the sentencing hearing continued, the district court judge also asked both parties if they had had the opportunity to review the information in the PSR, and then stated, "I note no objections from the government. There are apparently two objections from the defendant. But other than the objections that were filed, objection No. 1 and objection No. 2, Mr. Robinson, is the information contained in the presentence report true and accurate?" (R. 158 at 3). The defendant himself answered, "Yes, your honor." *Id.* at 4. When Robinson affirmed that all of the information in the PSR was "true and accurate," this included a description of the charged crime—conspiracy to distribute 500 grams or more of methamphetamine. *Id.* At 3–4. Based on this admission—that the PSR was true and accurate—the district court adopted the findings in the PSR regarding the nature of the offense. *Id.* at 5 ("Parties indicating to the Court the information contained in the presentence report is true and accurate and the Court will adopt the findings

of the probation officer regarding the offense conduct as its own findings regarding the nature and circumstances of the offense.") These adopted findings included the fact that the "[c]onspiracy was responsible for at least 1.5 but less than 4.5 kilograms of methamphetamine ice." *Id.* at 7, 15. When the judge announced the sentence associated with this amount of methamphetamine ("Base offense level is 36 when the offense involves at least 1.5 kilograms but less than 4.5 kilograms of methamphetamine ice,"), again Robinson did not object. *Id.* at 8, 15. Other than his objections to the career offender and leadership enhancements, Robinson asserted, once on his own, and once through counsel, that he had no other objections. *Id.* at 15, 22. And finally, at the end of sentencing, the judge stated, the "[c]ourt now enters judgment of conviction on Count 1, conspiracy to possess with the intent to distribute and distribute 500 grams or more of methamphetamine, a violation of 18 U.S. Code Section—excuse me, 21 U.S. Code Section 841(a)(1) and 846." *Id.* at 57–58. Robinson had no objection to the drug amount, the provision under which he was being sentenced, or the entry of judgment. Robinson's sentencing range under the United States Sentencing Guidelines was 262 to 327 months. The district court judge departed downward and sentenced Robinson to 200 months.

To sum up, Robinson affirmatively agreed to or acquiesced to the amount of drugs involved in the conspiracy repeatedly throughout the plea and sentencing phases. All of the multiple admissions of drug quantity therefore belie Robinson's claim that he did not plead guilty to a conspiracy involving 500 grams or more of methamphetamine. Nevertheless, Robinson argues that he entered a plea to conspiracy to distribute methamphetamine without admitting to any quantity, and that therefore, "[a]t worst, this admission may have

been sufficient … for the district court to sentence Robinson under §841(b)(1)(B)" which addresses crimes involving 50 grams or more of methamphetamine. Robinson's Brief at 15. The statutory sentence for this latter crime is five to forty years.

Given the myriad admissions and acquiescence we have recited above, one might wonder on what basis Robinson asserts that he did not admit to a crime involving 500 grams or more of methamphetamine under §841(b)(1)(A). For this assertion he points to two anomalies in the plea hearing. The first is that later in the plea colloquy, Robinson asserted that he *personally* only distributed a much smaller amount of methamphetamine. The second is that at the tail end of the plea agreement, when asking for the plea, the judge did not reference any subsection of 21 U.S.C. §841, but rather cited the U.S. Code provision for conspiracy in general. We will begin our analysis by discussing why Robinson's assertions lack legal relevance.

## II.

### A. Robinson's arguments

#### 1. *Pinkerton liability*

We begin with Robinson's argument that he should only be sentenced based on the quantity of methamphetamine he delivered (or considered delivering) to Joshua Jacobs. As Robinson rightly points out, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). And so, Robinson argues, if he only entered a plea to distributing methamphetamine

without admitting to any drug amount, he could only be guilty of, at most, the crime involving the smallest amount of methamphetamine described in the statute—a crime involving no more than 50 grams of methamphetamine as described in §841(b)(1)(B). And therefore, he continues, the district court could not sentence him as though he pled to a crime involving 500 grams or more of methamphetamine, as described in §841(b)(1)(A). Of course, when a defendant admits to a drug quantity that places him in a higher sentencing range, the sentence can be increased based on that admission without being submitted to a jury. *United States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Jan. 10, 2003.). After all, "[a]n admission is even better than a jury's finding beyond a reasonable doubt; it removes all contest from the case." *Id.*

We can dispose of this first argument quickly with the *Pinkerton* theory of liability. "[I]n a drug conspiracy, each conspirator is responsible not only for drug quantities directly attributable to him but also for amounts involved in transactions by co-conspirators that were reasonably foreseeable to him." *United States v. Jones*, 900 F.3d 440, 446 (7th Cir. 2018) (citing *Pinkerton v. United States,* 328 U.S. 640, 647–48 (1946)). And there is no doubt that Robinson pled guilty to a conspiracy, and that he agreed that the conspiracy involved 500 grams or more of methamphetamine. In addition to the transcript cites above, Robinson admitted to all of the acts necessary for a conspiracy:

> THE COURT: Conspiracy exists when you agree with one or more other individuals to commit an illegal act. The crime's actually committed when the agreement is made. It doesn't

necessarily have to be that the goals and objectives of the conspiracy are actually successful. Do you understand this?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you agree with anyone in this indictment to commit an illegal act?

THE DEFENDANT: Yes, Your Honor.

***

THE COURT: And what illegal act did you agree to do with him?

THE DEFENDANT: To deal methamphetamine.

(R. 161 at 8–9).

Robinson claims that the district court received "conflicting 'admissions'" from him concerning drug quantity. Robinson's Reply Brief at 11. We see no conflict. Robinson admitted to a *conspiracy* involving 500 grams or more of methamphetamine. His only objection was to how much he *personally* distributed—a number that is not relevant in sentencing under a *Pinkerton* theory of liability where every co-conspirator is responsible not only for drug quantities directly attributable to him, but also for amounts involved in transactions by co-conspirators that were reasonably foreseeable to him. *Jones*, 900 F.3d at 446.

Robinson points to two episodes in the testimony where he objected to the drug amount, but both are objections to the amount attributable to him personally, not to the amount attributable to the conspiracy. During the course of the plea colloquy, the district court set forth the evidence at trial that

No. 19-2441                                                    11

would support a verdict of guilty, including that the defendant and co-conspirators "obtained more than 1.5 kilograms [of methamphetamine] for distribution." (R. 161 at 21). After asking whether Robinson agreed with the evidence, Robinson stated, "No. I don't agree with the fact of it being that much that **I** was delivering. … '**I** only delivered —like I said, **I** only delivered to [sic] those couple times to Joshua Jacobs.'" *Id.* at 22 (emphasis ours). Following that, the U.S. attorney stated that three co-conspirators named in the indictment had all agreed to the 1.5 kilogram amount, and that "Joshua Jacobs was sentenced and he explained in detail the numerous times in which Mr. Robinson had given him drugs for redistribution." *Id.* The Defendant responded, "I heard that. I understand it but that's not what **I** did." *Id.* (emphasis ours). Robinson's objections to the amount he personally delivered, however, have no relevance to the amount the conspiracy distributed, which is the only relevant amount for sentencing purposes. In this way, Robinson's claims are similar to the ones in *United States v. Savage* where the defendant admitted that he participated in the conspiracy and agreed to the amount of drugs involved in the conspiracy, but wished to be sentenced based only on the amount of drugs for which he was individually responsible. *United States v. Savage*, 891 F.2d 145, 150–51 (7th Cir. 1989). We rejected this argument in *Savage*, and reject it here as well.

### 2. *The final plea statement*

The second reason Robinson contends that he did not admit to a conspiracy under §841(b)(1)(A) (involving 500 grams or more of methamphetamine), points to the district court judge's shorthand language when accepting the plea. At the end of the plea hearing, just before taking the plea, the judge

shortened his description of the crime that had been set forth
in detail before:

> THE COURT: As to the charge contained in the
> indictment, conspiracy to distribute metham-
> phetamine, a violation of 21 U.S. Code Section
> 846, how do you plead, guilty or not guilty?

> THE DEFENDANT: Guilty.

(R. 161 at 25). The statute the judge cited, 21 U.S.C. §846 states
in its entirety: "Any person who attempts or conspires to com-
mit any offense defined in this subchapter shall be subject to
the same penalties as those prescribed for the offense, the
commission of which was the object of the attempt or conspir-
acy." 21 U.S.C.A. §846. This single shortened description of
the crime did not erase the fact that the indictment, to which
Robinson pled guilty, described a conspiracy under 21 U.S.C.
§841(b)(1)(A) involving 500 grams or more of methampheta-
mine; throughout the course of the plea hearing the judge,
counsel, and the parties had repeatedly described a crime that
involved 500 grams or more of methamphetamine pursuant
to that section; and Robinson had agreed to those facts and his
participation in the conspiracy. Robinson agreed to his partic-
ipation in this conspiracy involving 500 grams or more of
methamphetamine in the filings leading up to the plea agree-
ments, in the plea agreement hearing, in the filings leading up
to the sentencing hearing and in the sentencing hearing itself.
The judge's incomplete summary at the end of the hearing did
not change any of the earlier agreements and understandings.

## B. Waiver or forfeiture

All of this is but another way of saying that Robinson
waived any argument as to drug quantity. An "admission[]

resolve[s] all important matters against" a defendant, and "removes all contest from the case." *Warneke*, 310 F.3d at 550. When a defendant intentionally relinquishes a known right—for example, when he states on the record that he has no objection to the pre-sentence report—he waives the right to appeal. *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000). Robinson argues instead that his failure to raise the alleged error at sentencing was not intentional, but neglectful and thus he has forfeited and not waived the argument. *See id.* Forfeited arguments are reviewed for plain error only. *Id.* The lines between waiver and forfeiture are not always clear. *United States v. Garcia*, 580 F.3d 528, 541 (7th Cir. 2009). In this case, however, we find that Robinson's conduct falls on the side of waiver. But even had it not, his argument would still fail on plain error review.

Although a guilty plea admits only the essential elements of the offense, *United States v. White*, 883 F.3d 983, 989–90 (7th Cir. 2018), "[a] defendant, of course, may admit far more than the elements of a charged crime by stipulating to facts in a plea agreement, by agreeing with the government's factual basis, or even by answering the judge's questions during the plea colloquy." *United States v. Paulette*, 858 F.3d 1055, 1060 (7th Cir. 2017). Therefore, when a defendant stipulates to conduct in a plea agreement, in a presentence report, and at his sentencing hearing, he waives any claim that he did not engage in that conduct. *United States v. Young*, 908 F.3d 241, 247 (7th Cir. 2018); *White*, 883 F.3d at 990 ("A defendant may admit more than just the essential elements of an offense by stipulating to facts in a plea agreement or by agreeing with the government's factual basis."); *United States v. Newman*, 148 F.3d 871, 876 (7th Cir. 1998) (although defendant objected at sentencing to conduct described in the presentence report and

the resulting loss calculation, "by stipulating to the conduct listed in [his] plea agreement, [the defendant] conclusively admitted those facts and waived any subsequent challenge to them.").

Here, Robinson did just that. He admitted to his participation in the conspiracy involving 500 grams or more of methamphetamine by stipulating to the facts in the plea agreement, by agreeing with the government's factual basis, by stipulating to conduct in the PSR, and by answering the judge's questions during the plea colloquy. At every step of the way the district court asked Robinson if he agreed with the facts as set forth in the indictment and the PSR, and every step of the way he agreed. His only disagreement was about his individual participation—facts that were not legally relevant to a determination of drug quantity in a conspiracy.

Robinson urges us not to look at the plea agreement and colloquy, however, arguing that he is not appealing an error that occurred at the plea hearing, but rather at sentencing. *See* Robinson's Reply. Brief at 1–2. He argues this because, of course, he does not wish to rewind his plea and risk a worse outcome after a trial. After all, all of his co-conspirators pled guilty and would be called to testify. Moreover, in exchange for his guilty plea, the government had agreed not to request a sentence increase based on prior felony convictions. Following a guilty verdict, the prior felony convictions would dictate a fifteen-year mandatory minimum.

Robinson describes the error below as follows: "the district court procedurally and plainly erred by beginning the sentencing procedure with the incorrect advisory Guidelines range because he pleaded guilty to an offense punishable under 28 [sic] U.S.C. §841(b)(1)(B) and not (b)(1)(A)." Robinson's

Reply Brief at 6. Put plainly, Robinson argues that the district court applied the sentencing range for a conspiracy involving 500 grams of methamphetamine or more (a sentencing range of 10 years to life), rather than a conspiracy involving 50 grams or more of methamphetamine (a sentencing range of 5-40 years). But there is no way to make this argument without also arguing that at Robinson's plea hearing he did not plead guilty to a crime of 500 grams or more of methamphetamine under §841(b)(1)(A). And with that, we have come full circle to the hole in the bucket—it is clear that Robinson, at his plea hearing, pled guilty to the crime of conspiracy to distribute 500 grams or more of methamphetamine.

But even if we looked only at alleged errors that occurred at sentencing, it was also clear, at the time of sentencing, that Robinson knew he was being sentenced for a crime involving 500 grams or more of methamphetamine under §841(b)(1)(A), and waived any objection. As we described above, despite raising two other objections to the PSR, Robinson never made any objections to the drug quantity described in the PSR. When asked whether he had any other objections, other than the one for his leadership role and the other for criminal history, the defendant himself stated that there were no other objections and the PSR was "true and accurate." (R. 158 at 3–4). And after the district court judge began the sentencing proceeding by stating that Robinson was before the court for sentencing "for the defendant's plea to conspiracy to possess with the intent to distribute and distribute 500 grams or more of methamphetamine, a violation of 21 U.S.C. section 841(a)(1) and 846," not only did Robinson fail to object, but his counsel affirmatively agreed with that recitation of the record. *Id.* We have held before that where a defendant has access to the PSR, and knows of his right to object to it, objects

to certain parts of the PSR, and then states on the record that he does not have any others, "[t]his seems to us the paragon of intentional relinquishment" that warrants a finding of waiver. *United States v. Brodie,* 507 F.3d 527, 531 (7th Cir. 2007).

"Although a lawyer's statement that a defendant has no objection to the PSR does not *automatically* constitute a waiver," we consider it in light of the surrounding circumstances and the record as a whole to determine whether counsel and the defendant made a knowing and intentional decision. *Garcia*, 580 F.3d 542 (emphasis in original). In this case, part of the surrounding circumstances would entail looking at the sheer number of times and the multiple proceedings in which Robinson and his counsel acquiesced or expressly agreed to the statement that he participated in a conspiracy involving 500 grams or more of methamphetamine—in plea agreements signed by the defendant, in court during the plea hearing, in objections to the PSR, and during the sentencing hearing. In addition to the explicit waivers in sentencing, Robinson also did not object when the court stated that the "[c]onspiracy was responsible for at least 1.5 but less than 4.5 kilograms of methamphetamine ice." (R. 158 at 7). He did not object when the judge announced the sentence associated with this amount of methamphetamine. (R. 158 at 8, 15); and he did not object when the court ended the hearing by saying the "[c]ourt now enters judgment of conviction on Count 1, conspiracy to possess with the intent to distribute and distribute 500 grams or more of methamphetamine." *Id.* at 57–58.

In looking at the circumstances as a whole, we also consider whether the lack of an objection could have been tactical or strategic. *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). There is no "rigid rule for finding waiver in

acquiescence." *United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010); and it is one that often requires some conjecture. *Garcia*, 580 F.3d at 542. We will find waiver "if the defendant had a strategic reason to forego the argument, that is, only if the defendant's counsel would not be deficient for failing to raise the objection." *United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008). "If the government cannot proffer any strategic justification for a defendant's omission, we will presume an inadvertent forfeiture rather than an intentional relinquishment." *United States v. Moody*, 915 F.3d 425, 429 (7th Cir. 2019).

The government argues that Robinson's choice not to object below was tactical. As the government posits, had he objected at the hearing or at the sentencing, the district court would have held proceedings to set aside the guilty plea, and would have set the matter for trial. And because all of the other co-conspirators had pled guilty and would be available to testify against Robinson, the odds of his acquittal were slim. Furthermore, he would have lost the three point reduction in his sentence for acceptance of responsibility and exposed himself to a much higher sentence with his previous felony convictions back on the table. Given the circumstances as a whole—the number of times Robinson agreed to the facts, the multiple proceedings in which he did so, and the fact that there was a reasonable strategic reason for acquiescing, we find that Robinson waived his argument that he did not plead guilty to a conspiracy involving 500 grams or more of methamphetamine.

Although we construe waiver principles liberally in favor of the defendant, *United States v. Dridi*, 952 F.3d 893, 898 (7th Cir. 2020), we have time and again found waiver in just this

circumstance—where a defendant or his counsel either concurs with the facts found in a pre-sentence report, or expressly declines to make an objection to those facts at sentencing, or both. *United States v. Cooper*, 243 F.3d 411, 416 (2001). *See also,* *United States v. Flores*, 929 F.3d 443, 449 (7th Cir.), *cert. denied,* 140 S. Ct. 504 (2019) (finding waiver where the defendant chose to raise certain sentencing objections, but not others); *United States v. Armour*, 804 F.3d 859, 865 (7th Cir. 2015) (finding waiver where the defendant stated that he had reviewed his violation memorandum with his lawyer, objected to two limited parts of it, but not any others, and where the court assumed that his silence as to others was part of a tactical strategy); *United States v. Scott*, 657 F.3d 639, 640 (7th Cir. 2011) (finding waiver where the defendant stipulated in his written plea agreement to the facts, and concurred at sentencing that the adjustment based on those facts applied); *United States v. Rodgers*, 610 F.3d 975, 979 (7th Cir. 2010) (finding waiver where the defendant filed no objections to the factual findings in the PSR and when asked in court if he had any further objection expressly stated that he did not); *United States v. Adcock*, 534 F.3d 635, 641 (7th Cir. 2008) (finding waiver where counsel affirmatively stated that he has no objection to the loss calculation in the PSR); *Brodie*, 507 F.3d at 531 (finding it to be the "the paragon of intentional relinquishment," where a defendant had access to his PSR, objected to certain parts, but then stated that he had no further objections to the remainder); *United States v. Knox*, 287 F.3d 667, 670 (7th Cir. 2002) (where the defendant and his lawyer informed the judge that, with the exception of certain identified issues, they had no problems with the conclusions of the presentence report, that representation waived any other theories related to the sentence); *United States v. Siegler*, 272 F.3d 975, 978 (7th Cir.

No. 19-2441                                                          19

2001) (A defendant who stipulates to facts as part of a written plea agreement waives challenges to the district court's reliance on those facts.). Robinson waived any argument regarding the drug quantity established in the plea and sentencing proceedings, and those admissions were sufficient to avoid any problems posed by *Apprendi*, 530 U.S. at 490 or *Alleyne v. United States*, 570 U.S. 99, 103 (2013).

Even if Robinson did not knowingly and intentionally waive any objection to the drug quantity necessary for a conviction under §841(b)(1)(A), his failure to object would have constituted forfeiture. A defendant forfeits his rights to object by failing to assert them in a timely manner due to neglect rather than intent. *Staples*, 202 F.3d at 995. A right that has been forfeited can only be reviewed for plain error. *Id.* In this case there was no error at all. Robinson pled guilty a conspiracy involving 500 grams or more of methamphetamine; the district court accepted that plea and sentenced him accordingly. We find no error.

The judgment of the district court is therefore AFFIRMED.